OPINION
This timely appeal arises from the judgment of the Mahoning County Court of Common Pleas awarding Appellees $33,654.08 on their counterclaim in this matter. Appellees alleged they had made duplicate payments to Appellant during construction of Appellees' home. Appellant argues that the judgment is against the manifest weight of the evidence which was presented at the trial to the court. For all of the following reasons, this Court affirms the trial court's judgment.
On September 30, 1993, National Builders Corporation ("Appellant"), entered into a written contract with Dr. Alex J. Vrable ("Appellee"), to build he and his wife a new home located at 5462 Bay Hill Drive, Canfield, Ohio. The contract price was set at $560,000.00, which included $59,665.00 in allowances for appliances, plumbing, light fixtures, carpeting, landscaping, a concrete driveway and other miscellaneous items. Also included within the contract price of $560,000.00 was a 10% allowance for profit and a 15% allowance for additional overhead and to cover possible cost overruns. (Tr. pp. 20, 50-52).
In October, 1993, Appellees took out a new home construction line of credit with The Second National Bank of Warren. It is undisputed that Appellant was authorized to make periodic withdrawals from this line of credit and did in fact make withdrawals up to an amount which totaled the contract price of $560,000.00. The last such withdrawal occurred on November 25, 1994.
Appellant assigned its employee, Robert C. Riley, as the project manager for the construction of Appellees' home. Mr. Riley performed all of the duties of a general contractor such as hiring subcontractors, supervising the construction and essentially acting as the liaison between Appellees and Appellant. Appellant paid Mr. Riley $42,750.00 for his services relating to the construction project. (Tr. p. 59).
In a letter dated December 19, 1994, Appellant advised Appellees that the completed construction project included certain "extras" which Appellees would have to pay above and beyond the original contract price of $560,000.00. The total amount of these "extras" was listed at $41,040.67. (Tr. p. 39). At or near the time Appellees received this letter, they delivered to Appellant a seven (7) page handwritten list of outstanding projects that still needed to be completed at the construction site. (Tr. pp. 39-41). By January 20, 1995, most of the items on Appellees' list had been completed.
On March 6, 1995, Appellant filed an affidavit to obtain a mechanic's lien which alleged that Appellees still owed $33,504.79 for the various "extras" referenced in Appellant's December 19, 1994 letter. On March 24, 1995, Appellees filed an affidavit of full payment, pursuant to R.C. § 1311.011 (B) (1). In response, on July 14, 1995, Appellant filed a complaint in the Mahoning County Court of Common Pleas seeking damages in the amount of $33,504.79, plus interest, and also sought foreclosure on its mechanic's lien.
On September 8, 1995, Appellees filed an answer to the complaint as well as a counterclaim. In their counterclaim Appellees alleged, in relevant part, that they had made duplicate or excessive payments to various vendors and subcontractors over and above the original contract price of $560,000.00. Appellees also alleged that Appellant did not properly perfect its mechanic's lien.
On July 16, 1997, a bench trial on all of the claims was held before visiting Judge Robert B. Ford in the Mahoning County Court of Common Pleas. On September 26, 1997, the trial court filed its Judgment Entry. The trial court determined that Appellant's mechanic's lien was not properly perfected and that Appellees were liable to Appellant for $6,555.00 in "extras". The trial court, however, also determined that Appellees proved by a preponderance of the evidence that they had made a number of duplicate or excessive payments to various vendors and that Appellant was liable to Appellees in the amount of $33,654.08 and entered its judgment accordingly.
It is only that portion of the Judgment Entry awarding Appellees $33,654.08 which forms the basis of the present appeal. In its sole assignment of error, Appellant argues that:
 "THE TRIAL COURT ERRED PREJUDICIALLY WHEN IT FOUND THAT VRABLE MADE OVERPAYMENTS TO NBC IN THE AMOUNT OF $33,654.03 [sic], AND WHEN IT GRANTED JUDGMENT TO VRABLE IN THE AMOUNT OF $33,654.08, FOR THE REASONS THAT SAID FINDING AND JUDGMENT ARE NOT SUSTAINED BY SUFFICIENT EVIDENCE, ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, AND ARE CONTRARY TO LAW."
In its brief to this Court, Appellant argues that no evidence, other than the testimonial evidence of Appellee, Dr. Vrable, was produced at trial to demonstrate that Appellees made duplicate or overpayments to various suppliers and vendors in the amount of $33,654.08. Appellant concedes that Appellees proved two specific overpayments amounting to $10,952.75, but argues that any judgment in Appellees' favor greater than that amount is against the manifest weight of the evidence.
In support of its argument, Appellant directs this Court's attention to the fact that all of the documentary evidence supporting Appellees' individual claims were copies of checks written to the various vendors and suppliers. Appellant argues that the checks produced by Appellees are not evidence of any overpayments because these checks do not show the entire transactional history associated with a particular vendor. Appellant asserts that it uses a "voucher check" system which, in many cases, consists of one check being issued for the combined total of several invoices.
To demonstrate the purported weakness of Appellees' evidence, Appellant observes that Appellees produced an invoice from a surveyor for $1,470.00. Appellees also attached to this invoice a copy of a check made payable to the surveyor for $2,530.00 which tended to indicate that Appellees had overpaid by approximately $1000.00. In turn, Appellant introduced into evidence the voucher portion of the check which indicated that the check in question was in satisfaction of three separate invoices, only one of which pertained to Appellees' home construction project. At this point in the proceedings, Appellees withdrew their claim of overpayment of the surveyor's bill and agreed that only $1470.00 had been paid for work done on Appellees' home.
Appellant suggests that Appellees used the same flawed reasoning with respect to each and every individual claim of alleged duplicate or excessive payment to the various vendors and that it is the voucher system which explains the appearance of these overpayments. This Court does not find Appellant's argument persuasive.
Appellant's argument ignores the basic fact that it was the introduction into evidence of the voucher portion of the check that refuted Appellees' claim of a $1,000.00 overpayment to the surveyor. While Appellant now argues that the mere existence of the voucher system itself discounts Appellees' claims in toto,
Appellant never introduced any other vouchers to contradict Appellees as to the remaining claims of overpayments and/or duplicate payments. Indeed, Appellant's counsel stated:
 "Your Honor, the only rebuttal that I would have would be to bring in each one of the vouchers in this situation. And I could, but I'm not going to do that.
"The Court: You're not going to do that?
"I'm not going to do that . . ."
(Tr. pp. 158-59)
The net effect of Appellant's election not to produce the vouchers in question was to leave Appellees' remaining claims unchallenged by any evidence before the trial court. With the state of the evidence before the trial court established, we turn our attention to the allegations that the trial court's judgment is not supported by sufficient evidence and is against the manifest weight of the evidence.
A. Sufficiency of the Evidence.
In Ohio, "[t]he trial court's judgment is based on sufficient evidence where the record contains some competent evidence to sustain the findings of the trial court." Cole v.Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771, 777. In the case at bar, Appellee presented evidence of approximately twenty-four (24) instances of either overpayments or duplicate payments to various vendors. While the number of separate claims and the amount of evidence adduced is too voluminous to cite individually, this evidence consisted of canceled checks, invoices and testimony as to these payments. Our review of the one hundred and seventy (170) pages of the trial transcript indicates that there was ample evidence to satisfy the minimal "sufficiency" requirement. Appellant's argument to the contrary is without merit.
B. Manifest Weight of the Evidence.
Having established that there was sufficient evidence to support the trial court's judgment, our next task is to determine whether that judgment is against the manifest weight of the combined evidence presented at trial. We conclude that it is not.
It has long been held that, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279; seealso, Gerijo, Inc. v. City of Fairfield (1994), 70 Ohio St.3d 223. Upon review, the appellate court indulges every reasonable presumption in favor of the lower court's judgment and finding of facts. Id., citing, Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. As the Ohio Supreme Court observed:
 "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
Myers v. Garson (1993), 66 Ohio St.3d 610, 615, quoting. SeasonsCoal, supra, 10 Ohio St.3d at 80.
As noted earlier, Appellees' case consisted of a number of individual claims. The sheer number of claims and the documentary evidence in support thereof makes a recitation of each individual claim and its corresponding evidentiary support impractical. It is clear, however, that the trial court conducted an exhaustive review of all of the evidence in this case. In the Memorandum accompanying its Judgment Entry, the trial court stated:
 "The [Appellees] presented a number of documents proving the payment of the full contract price of $560,000.00 and that [Appellant] had "no claims" at the time of full payment. Further, [Appellees] offered a large number of documents, without objection, which were asserted to prove the excess or duplicate payments of [Appellant] within the contract price of $560,000.00.
"* * * * * *
 "Some documents were evidence of overpayment by [Appellant] on invoices for materials or services. Some documents indicated payment by [Appellant] for which there was no contract obligation or a duplicate payment by [Appellees]. Some indicated payment of a higher price than that agreed to or promised. Some indicated a greater quantity than was needed. [Appellant] waived any denial, exception, or explanation except one invoice.
 "The Court will find after a lengthy review of the documents and testimony, in so far as they can be understood, that an overpayment of $33,654.08 was made."
(Emphasis added).
It is clear that this Court will not substitute its judgment for that of the trial court when there is competent and credible evidence supporting the trial court's findings.Seasons Coal Co., supra. As the trial court noted, with the exception of the challenged invoice from the surveyor, Appellant failed to produce any other "voucher check" which would contradict Appellees' claims. This failure is even more glaring as Appellant claimed at trial that it could have produced the evidence but chose not to. In the absence of any evidence to the contrary, the only thing before the trial court was competent and credible evidence supporting Appellees' claims. As such, this Court will not disturb the trial court's findings.
Our review of the record leads to the conclusion that the trial court's judgment is supported by sufficient evidence and that such judgment is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled and the judgment of the trial court is hereby affirmed.
Cox, P.J., and Vukovich, J., concurs.
APPROVED:
 ______________________________ CHERYL L. WAITE, JUDGE